IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

EARVIN EALY,
      Plaintiff,

vs.                                 Case No.: 5:17cv304/TKW/EMT

CORIZON, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, a non-prisoner proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint under 42 U.S.C. § 1983 (ECF Nos. 1, 8). Now before the court is Plaintiff's Second Amended Complaint (ECF No. 10). Upon review of the second amended complaint, it is evident the facts as presented fail to support a viable claim for relief against the Defendants despite the fact Plaintiff had the opportunity to substantively amend his complaint after deficiencies were pointed out to him (ECF No. 9). *See Silva v. Bieluch*, 351 F.3d 1045, 1048–49 (11th Cir. 2003) (Generally, "a district court must grant a plaintiff at least one opportunity to amend their claims before dismissing them if it appears a more carefully drafted complaint might state a claim upon which relief can be granted even if the plaintiff never seeks leave to amend.") (quotation omitted). The undersigned thus

recommends the case be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief can be granted.

## I.    BACKGROUND

Plaintiff, an inmate at Gulf Correctional Institution ("GCI") at the time of the events giving rise to this action, names nine Defendants in the second amended complaint: the Florida Department of Corrections ("FDOC"); Corizon, a healthcare services provider that administered medical services to inmates at GCI at the time of the events of which Plaintiff complains; Ms. Lytle and Mr. Suber, nurses at GCI; Mr. Brown, a major at GCI; GCI Assistant Warden S. Roddenberry; GCI Warden James Blackwood; I. Solis, M.D., a physician at GCI; and Holly Smith, an employee of GCI whose position Plaintiff does not identify (ECF No. 10 at 1). Plaintiff's complaint concerns four "incidents" that allegedly occurred at GCI after his arrival there on or about January 14, 2014.

### A.    Incident One

Plaintiff alleges he is legally blind and was authorized to have an "audio book tape player" (ECF No. 10 at 2).[1] He says he made (non-Defendant) Sergeant Yon

---

[1] All facts are derived from the Statement of Facts section of Plaintiff's second amended complaint (ECF No. 10 at 2–8, as numbered by the court's electronic filing system).

and medical staff aware of that fact after his arrival at GCI on or about January 14, but Yon nevertheless confiscated the audio book and "[n]o other method was offered to make visual material accessible" to him (ECF No. 10 at 2).

The next day, Plaintiff advised Defendant Suber of his visual impairment and requested an "impaired aide" (*id.*). When an aide had not been assigned within five days of Plaintiff's request, Plaintiff advised Defendants Lytle, Suber, Brown, and Roddenberry that he had been without "an impaired aide" for a week and needed one immediately (*id.*). Plaintiff says he also informed the Defendants he "had been repeatedly injured in the past due to prison staff failing to provide an impaired aide" and showed the Defendants medical passes that authorized him to have an aide (*id.*).

"On or about the end of January, Plaintiff advised Nurse Lytle, Nurse Suber, Major Brown, and Assistant Warden Rodenberry that he still did not have an impaired aide" (*id.* at 3). Plaintiff filed a grievance about the matter, "advising Assistant Warden Rodenberry and Warden James Blackwood that he required impaired aides to assist him with everyday activities" (*id.*). Two days later, Plaintiff filed another grievance "advising Asst Warden Rodenberry and Warden James Blackwood that [he] still did not have an impaired aide and . . . had injured himself due to not having an impaired aide" (*id.*). The next day, Plaintiff filed a grievance "advising Warden James Blackwood that he required a two-man handicapped

accessible cell and an impaired aide pursuant to his medical passes" (*id.*).  Shortly thereafter, Plaintiff says, he "fell and sustained an injury to his leg and other body parts causing him extreme pain" (*id.*).

Plaintiff alleges Corizon had a custom or policy of refusing to provide blind inmates with impaired aides, as "witnessed and experienced on multiple occasions by Plaintiff and other disabled inmates" (*id.* at 4).

B.    Incident Two

With regard to the second incident, Plaintiff states that on "[o]r about February 2014," he was moved to a different dorm without his impaired aide, Kevin Shaw (*id.*).  Plaintiff repeatedly informed Defendants Lytle and Roddenberry that Mr. Shaw had been assigned to him but only worked certain days of the week.  He also "advised that he had been repeatedly injured in the past due to not having an impaired aide and that failure to provide Plaintiff with an impaired aide would likely lead to additional serious injuries" (*id.*).  Plaintiff filed an inmate request informing Defendant Smith that he needed a secondary impaired aide (*id.*); he also filed a grievance advising Defendants Solis and Blackwood "that the facility did not train aides and that he required two impaired aides" (*id.* at 5).  He filed a grievance advising Defendant Roddenberry "he had sustained injury, was improperly housed, and had no impaired aide" (*id.*).  Plaintiff requested that "Johnson Jean" be assigned

as his primary aide and again requested a secondary aide (*id.*).  Plaintiff says he fell on February 5, 2014, and injured his left thumb, which resulted in extreme pain when he tried to perform "everyday life activities on a day when his impaired aide was off duty" (*id.*).[1]

As with Incident One, Plaintiff contends Corizon had a custom or policy of refusing to provide blind inmates with impaired aides and handicapped accessible cells, as "witnessed and experienced on multiple occasions by Plaintiff and other disabled inmates" (*id.*).

C.    Incident Three

Plaintiff complains that between January 14 and February 1, 2014, he was not housed in a two-man cell and that "[o]n or about February 2014" he was moved into a "non-ADA handicapped accessible cell" for several weeks (*id.* at 6).[2]  Plaintiff alleges that both in person and through a grievance, presumably the grievance referenced above, he advised Defendant Rodenberry that he was being housed improperly and had been injured in the past and likely would be injured again due

---

[1] Based on Plaintiff's allegations, it appears he was assigned two "impaired aides" between his arrival at GCI on January 14 and his February 5 fall—Kevin Shaw and the aide who was "off duty" on the day of Plaintiff's fall.

[2] Plaintiff also alleges he was housed in a non-ADA accessible cell between January 2014 and May 2014.

Case No.: 5:17cv304/TKW/EMT

to the circumstances (*id.*).  Plaintiff says he advised Rodenberry of his "ADA status" and showed him medical documentation mandating an ADA-compliant cell. According to Plaintiff, Rodenberry responded "'he did not care' and threatened Plaintiff about filing grievances" (*id.*).  Plaintiff also advised Defendants Brown and Lytle of his status and the issue regarding an ADA-compliant cell, but again to no avail.  According to Plaintiff, Brown and Lytle "laugh[ed] and/or threaten[ed] to place Plaintiff in confinement" (*id.*).

Plaintiff repeats the allegation as to Corizon's alleged custom and policy regarding the refusal to accommodate blind inmates, this time with respect to housing assignments.

D.    Incident Four

As for the last incident, Plaintiff states that on or about March 17, 2014, Defendant Lytle assigned Corey Soars as his impaired aide.[3]  Plaintiff says Mr. Soars did not want the job and refused to assist Plaintiff and that Lytle was aware of that fact.    Through grievances and other means, Plaintiff advised Defendants Roddenberry, Brown, Lytle, and Suber, as well as non-Defendant "HSA Hand," that

---

[3]  Mr. Soars appears to have been at least the third "impaired aide" assigned to Plaintiff between January 14 and March 17.

Case No.: 5:17cv304/TKW/EMT

Mr. Soars was not assisting him, thereby causing him to miss meals and other unspecified activities.  Plaintiff says he was unable to eat between March 19 and March 26 because Soars would not take him to the cafeteria.  Plaintiff again told the Defendants "he needed an impaired aide that would assist him," but the Defendants denied his request (*id.* at 8).

Plaintiff repeats the allegation as to Corizon's custom and policy, in this instance regarding a refusal to provide blind inmates with "aides that were willing to assist" (*id.*).  Plaintiff says he "repeatedly witnessed Corizon staff assigning impaired aides that Corizon staff knew would not assist handicapped inmates" (*id.*).

Plaintiff asserts an Eighth Amendment claim for deliberate indifference against all Defendants except the FDOC.  Plaintiff alleges the FDOC violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12165; the FDOC and Corizon violated the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; the FDOC and Corizon were negligent for failing to provide him adequate medical care and accommodations; and the FDOC and Corizon were negligent per se for breaching the standards set forth in the "Florida Americans with Disabilities Accessibility Implementation Act ("FADAIA"), §553.501 et seq., Florida Statutes," the ADA, and the RA (*id.* at 17).  As relief, Plaintiff seeks damages, including

attorney fees, costs, and punitive damages, as well as any other equitable relief the court deems appropriate (*id*. at 19).

I.    DISCUSSION

    A.    Standard of Review

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a plaintiff cannot rely on "naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alteration omitted); *see also Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). In other words,

> [p]leadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Case No.: 5:17cv304/TKW/EMT

*Iqbal*, 556 U.S. at 679.

The court reads a pro se plaintiff's pleadings in a liberal fashion and holds them to a less stringent standard than pleadings drafted by attorneys. *See Harris v. Goderick*, 608 F. App'x 760, 761 (11th Cir. 2015).  Nevertheless, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . .  A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."  *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted); *see also Bishop v. Romer*, Nos. 98–1294, 98–1296, 1999 WL 46688, at *3 (10th Cir. Feb. 3, 1999) (unpublished) (holding that this less stringent standard should not allow a court to ignore inadequacies in the complaint where a pro se plaintiff fails to allege facts necessary to establish the claim or "conjure up questions never squarely presented").

B.    Plaintiff's Claims

A viable claim under 42 U.S.C. § 1983 requires a plaintiff to establish two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303

Case No.: 5:17cv304/TKW/EMT

(11th Cir. 2001).  Here, Plaintiff assert claims under the Eighth Amendment, ADA, and RA, as well as state law claims.

      1.    Eighth Amendment

      a.    Individual Defendants

The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement.  First, under the "objective component," a prisoner must prove the condition of which he complains is sufficiently serious to violate the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The challenged condition must be "extreme."  *Id*. at 9.  While an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney*, 509 U.S. 25, 33 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id*. at 35.  Moreover,

> the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement].  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

Case No.: 5:17cv304/TKW/EMT

*Id*. at 36. The Eighth Amendment guarantees prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Second, the prisoner must show the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. *Hudson*, 503 U.S. at 8 (marks and citation omitted). The proper standard is that of deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Negligence does not suffice to satisfy this standard, *id*. at 305, but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). In defining the deliberate indifference standard, the *Farmer* Court stated:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id*. at 837. The official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844. Accordingly, the Eleventh Circuit has identified three components of a deliberate indifference claim: (1) subjective knowledge of a risk of serious harm; (2) disregard

of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (internal marks and citation omitted).

Plaintiff's allegations fail to establish that any individual Defendant was subjectively aware that Plaintiff's housing assignment(s) or issues with assigned aides put Plaintiff at risk of serious harm.  Although Plaintiff states he fell on February 1 and 5 and suggests the Defendants were responsible for the falls, he has not explained any causal connection between the falls and Defendants' conduct.  To the contrary, Plaintiff acknowledges an aide was assigned to him at the time of the February 5 fall and was simply "off duty."  Moreover, the facts alleged do not plausibly establish that any Defendant acted with a sufficiently culpable state of mind or knew of and disregarded an excessive risk to Plaintiff's health or safety. The failure of Defendants to immediately reassign Plaintiff to a different cell or immediately correct any issues with assigned aides does not constitute deliberate indifference but instead—*at most*—negligence, which is insufficient to satisfy the deliberate indifference standard.  *See, e.g., Redding v. Ga.*, 557 F. App'x 840, 844 (11th Cir. 2014) (stating, in a case where an inmate with a disability was prescribed a bottom bunk but assigned a top bunk, that "[i]t may have been negligent to assign Redding a bunk contrary to his profile, but an Eighth Amendment claim requires conduct rising to a level above even gross negligence").

Additionally, although Plaintiff claims Defendants were deliberately indifferent to his medical needs, he provides no facts whatsoever regarding treatment received—or not received—for the injuries he allegedly sustained.  Hence, he has stated no claim on which relief can be granted regarding Defendants' provision of medical care and thus has failed to plead facts sufficient to sustain an Eighth Amendment deliberate indifference claim.

b.    FDOC

The Eleventh Amendment insulates a state from suit brought by individuals in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity.  *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984).  The Eleventh Amendment also bars suit against state officials acting in their official capacities when the state is the real party in interest.  *Id*. at 101.  "The [Florida] Department of Corrections is not amenable to suit because it has immunity under the Eleventh Amendment."  *Leonard v. Dep't of Corr. Fla.*, 232 F. App'x 892, 894 (11th Cir. 2007) (*citing Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989)).  Therefore, Plaintiff has not stated a viable Eighth Amendment claim against the FDOC.

c.    Corizon

A municipality or other governmental entity may be held liable under § 1983 where that municipality's policies or customs cause a constitutional violation. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). However, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Harris*, 489 U.S. at 385. Although Corizon "is not a governmental entity, '[w]here a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity,' that private entity, like a municipality, may be held liable under § 1983." *Ancata v. Prison Health Servs.*, 769 F.2d 700, 703 (11th Cir. 1985) (*quoted in Fields v. Corizon Health, Inc.*, 490 F. App'x 174, 181–82 (11th Cir. 2012) (affirming that jury could "reasonably conclude that Prison Health's policy restricting the transportation to hospitals of inmates with serious medical needs was a direct cause of Mr. Fields' injuries")). However, Plaintiff alleges no facts in the second amended complaint which specify a policy or custom of Corizon that was followed and caused injury to him. He makes only vague and conclusory allegations about purported policies of Corizon, which are insufficient to state a claim. *See, e.g., Gonzalez*, 325 F.3d at 1235. In addition, Plaintiff's own allegations undermine his claims, as

Case No.: 5:17cv304/TKW/EMT

Plaintiff acknowledges multiple aides were assigned to him and specifies only certain limited periods of time he claims to have been placed in non–ADA compliant cells.

To the extent Plaintiff seeks to hold Corizon responsible for the acts of its employees, the law is clear that the doctrine of *respondeat superior* or vicarious liability does not provide a basis for recovery for a § 1983 claim. *Marsh v. Butler Cty.*, 268 F.3d 1014, 1035 (11th Cir. 2001) (en banc) (*cited in Farrow v. West*, 320 F.3d 1235, 1249 n.1 (11th Cir. 2003)); *see also Harvey v. Harvey*, 949 F.2d 1127, 1129 (11th Cir. 1992) (*citing Monell*, 436 U.S. 658)); *Collins v. City of Harker Heights*, 503 U.S. 115 (1992); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). Thus, for Corizon to be liable, there must be an identifiable policy which was "the moving force" behind injury or harm to Plaintiff. *See Fields*, 490 F. App'x at 183–85 (holding that prisoner "had a serious medical need that Prison Health's policy did not recognize as sufficient to warrant hospital care" and, as a result, prisoner suffered paralysis that "could have been averted.").  As noted above, as to each "incident" Plaintiff broadly and generally alleges that Corizon had a custom or policy that violated his rights and the rights of other impaired inmates.  Such conclusory allegations are insufficient to state a plausible claim.  Thus, because the second amended complaint does not sufficiently identify a policy or custom of Corizon that

was followed and harmed Plaintiff, Plaintiff has failed to state a viable claim for relief against Corizon.

>           2.      ADA/RA

An unpublished decision of the Eleventh Circuit strongly suggests that Title II of the ADA does <u>not</u> abrogate sovereign immunity absent a constitutional violation. *See Redding*, 557 F. App'x at 844 (holding that because Redding's allegations did not show defendants' conduct violated his constitutional rights, defendants were entitled to Eleventh Amendment immunity against his ADA claims). Thus, in the absence of an Eighth Amendment violation, the Defendants in this action likely are immune from any ADA claim. Nevertheless, because *Redding* is unpublished and therefore non-binding, and because the immunity issue presents a complex and significant question of law, the undersigned will address the merits of Plaintiff's ADA/RA claims.

Title II of the ADA applies to inmates in state prisons. *See Bircoll v. Miami–Dade Cty.*, 480 F.3d 1072, 1081 (11th Cir. 2007). In order to establish a prima facie case under the ADA, a plaintiff must show: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) that the exclusion, denial of benefit,

or discrimination was by reason of his disability.[2]   *Id*. at 1083.   An ADA claim may proceed on the theory that the defendant failed to reasonably accommodate the plaintiff's disability.   *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008).   A reasonable accommodation must provide effective access to prison activities and programs.   *See, e.g.*, *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (holding that a deaf inmate's "limited participation" in activities without the benefit of an interpreter, did not support a finding that he "enjoyed meaningful access").

A "qualified individual with a disability" is an individual "who, with or without reasonable modifications to rules, policies, or practices, . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."   42 U.S.C. § 12131(2).   As is relevant to this case, "auxiliary aids and

---

[2] Section 504 of the RA requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."   29 U.S.C. § 794(a).   Because the standards under both statutes are generally the same and the subtle distinctions between the statutes do not appear to be implicated in this case, this court will "treat [Plaintiff's] claims under the two statutes identically."   *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003); *see also MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (The ADA and the RA have the same standard for liability and are to be interpreted consistently).

services" include "[q]ualified readers; taped texts; audio recordings; Brailled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 U.S.C. § 35.104(2); *see also Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009) (citing former version of section 35.104 and identifying similar auxiliary aids and services).

The allegations of Plaintiff's complaint indicate he is a qualified individual with a disability.  Even assuming Plaintiff has adequately pled he was denied the benefits of a service when the "audio book tape player" was confiscated by Sergeant Yon, he has not alleged that the tape player was confiscated *because of*—or, stated differently, "by reason of"—his disability.  *Bircoll*, 480 F.3d at 1083.  He thus has failed to state a viable claim in that regard.  With respect to aides, Plaintiff acknowledges prison officials assigned multiple aides to him.  Although Plaintiff complains one *aide* refused to assist him, causing him to miss (an unidentified number of) meals and unspecified activities, this does not show that *prison officials* denied Plaintiff services (i.e., meals and access to the cafeteria and activities), much less that they did so *by reason of* his disability.  To the extent Plaintiff complains he

was denied an aide *of his choosing*, Plaintiff is not entitled to select his own aide in order to meaningfully access prison benefits. *See Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 95 (2d Cir. 2015) (a reasonable accommodation need not be perfect or the one most strongly preferred by the plaintiff, but it still must be effective). Finally, while Plaintiff notes that at some point he had an aide who did not work every day, Plaintiff has not shown that this intermittent, and evidently short-term, absence of an aide amounted to a denial of services or benefits under Title II of the ADA. *See, e.g.*, *Moore v. Curtis*, 68 F. App'x 561, 563 (6th Cir. 2003) (isolated instances of failing to accommodate disabled prisoner's condition does not state a claim under the ADA).

Plaintiff additionally complains his housing assignments were non-ADA compliant or not limited to two inmates. Not only are such allegations broad and conclusory, *see Gonzalez*, 325 F.3d at 1235, but the facts alleged indicate the assignments were temporary, *see, e.g., Moore*, 68 F. App'x at 563; *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 73 (2d Cir. 2016) (trivial temporal delays do not limit access to programs, services, and activities under the ADA). In any event, as with the issue regarding his personal aide, Plaintiff has offered no facts indicating the alleged non-compliant temporary housing assignments were made *because of* his disability. *See, e.g.*, *Moore*, 68 F. App'x at 563 (finding that inmate's claims under

the ADA/RA failed, in part, because inmate "did not allege or show that the defendants deprived him of any service, program, or activities because of his disability . . .").  Plaintiff therefore has failed to state a viable claim under the ADA or RA.

### 3.    State Law Claims

Plaintiff asserts state law claims for negligence and negligence per se against the FDOC and Corizon based on the facts set forth above.  In support of his negligence per se claim, Plaintiff invokes the "Florida Americans with Disabilities Accessibility Implementation Act ("FADAIA") §553.501 et seq., Florida Statutes" (ECF No. 10 at 17).  To the extent Plaintiff has attempted to state a claim based on The Florida Accessibility Code for Building Construction ("FAC"), established by Florida Statutes §§ 553.501 through 553.513, which adopts and incorporates the ADA standards for accessible design, he has failed to do so.  Indeed, Plaintiff has alleged no facts suggesting that either Corizon or the FDOC designed or constructed GCI, that GCI qualifies as a place of accommodation under the ADA/FAC, that GCI is in violation of the ADA/FAC, that Plaintiff has been denied full and equal enjoyment of the services or facilities offered by any Defendant due to the violation, or—to the extent the violation is premised on an architectural barrier—that the barrier is prohibited by the ADA and its removal is readily achievable.  *See, e.g.,*

Case No.: 5:17cv304/TKW/EMT

*Seiger v. Wollowick*, No. 8:16-CV-475-T-33AEP, 2016 WL 5391392, at *2–3 (M.D. Fla. Sept. 27, 2016).  Even if Plaintiff had included such allegations, because the undersigned finds Plaintiff has failed to state a viable claim under federal law, the undersigned finds the court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367(c)(3) (allowing courts to decline to exercise supplemental jurisdictions over state law claims when the court has "dismissed all claims over which it has original jurisdiction").

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's federal claims be **DISMISSED WITH PREJUDICE** for failure to state a claim on which relief may be granted.

2. That Plaintiff's state claims be **DISMISSED WITHOUT PREJUDICE** to Plaintiff refiling them in state court should he choose to do so.

3. That the Clerk be directed to close the file.

At Pensacola, Florida, this 7<u>th</u> day of October 2019.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.**